UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RAIN CII CARBON LLC | CIVIL ACTION |
| | NO: 12-2014 |
| VERSUS | |
| | JUDGE: JANE TRICHE-MILAZZO |
| STEPHEN KURCZY, *ET AL.* | MAGISTRATE JUDGE: SALLY SHUSHAN |

**OPPOSITION TO MOTION TO REMAND**

Defendants, Stephan Kurczy, MergerMarket (U.S.) Limited and the Financial Times Group Limited (the "Defendants"), submit their opposition to the motion to remand filed by Plaintiff, Rain CII Carbon, LLC ("Rain").

This matter was properly removed to this Court, and the motion to remand should be denied because (1) there is complete diversity of the parties; (2) in the six days that have passed since the action was filed, Defendants have shown no intent to waive the right to remove to federal court and are not estopped from asserting their right to remove; and (3) abstention is not warranted.

**I.    PROCEDURAL BACKGROUND**

At 9:36 a.m. on July 31, 2012, Stephen Kurczy, a business reporter for *Debtwire* news service, sent an e-mail to Rain, asking for a comment for a news report that Mr. Kurczy was writing about Plaintiff's 2012 second-quarter earnings.[1] At 12:39 p.m. on July 31, *Debtwire* news service released a news report about Rain that included Rain's second-quarter earnings, but also put the new facts in context, explaining the critical role Rain plays in the aluminum market

---

[1] *See* Affidavit of Ken Meehan, Editor-in-Chief of *Debtwire* News Service, attached as exhibit 1, ¶ 7; Affidavit of Gerard M. Sweeney in Support of Plaintiff's Motion for Temporary Restraining Order.

and the broader economy. The Article was released to thousands of *Debtwire's* subscribers via an e-mail alert and on its subscription website (the "Article").

Despite the prior publication of the Article, at about 4:30 p.m. on July 31, Rain filed a Petition for injunctive relief, declaratory judgment and damages and a motion for a TRO and preliminary injunction. In the caption, the Petition named as Defendants Stephen Kurczy and "*Debtwire North America, a division of and/or the Financial Times Group and or FT Group*."[2] The text of the Petition states that "Defendant, Stephen Kurczy, is a reporter for defendant Debtwire North America, a division of defendants The Financial Times Group and/or FT Group."[3]

Judge Tiffany Chase of the Civil District Court for the Parish of Orleans conducted a hearing by telephone on the evening of July 31, and granted a TRO at 8:43 p.m. The TRO was directed to "Defendants Stephen Kurczy; Debtwire Northe [sic] America, A Division of the Financial Times Group; The Financial Times Group; and FT Group." It ordered the Defendants to remove "the information previously posted" and prohibited them from "publishing in any fashion disclosing to anyone any financial data concerning Rain's second quarterly earnings for 2012."[4] On the following day, August 1, 2012, the Court entered an *ex parte* Order extending the TRO until "such time as the court rules upon the Motion for Preliminary Injunction, which is set for August 8, 2012."[5]

Because the TRO is a patently unconstitutional prior restraint on *Debtwire's* First Amendment rights and there is no basis for finding that *Debtwire* -- a news organization -- is a competitor of Rain or that routine financial results are "trade secrets," Defendants immediately

---

[2] *See* Petition, attached as exhibit 2, p. 1 (emphasis added).
[3] *See* Petition (exhibit 2), ¶ 2.
[4] *See* TRO, attached as exhibit 3.
[5] *See* Order extending TRO, attached as exhibit 4.

filed an *ex parte* motion to vacate the TRO.  On August 2, the Court denied the *ex parte* motion and set a hearing on the motion to dissolve the TRO for August 8.[6]

Later on August 2, and on the morning of August 3, Defendants filed virtually-identical writ applications with the Louisiana Fourth Circuit Court of Appeal, from the District Court's Orders granting the TRO, extending the TRO and denying the motion to dissolve the TRO.   At the end of the day on Friday, August 3, the Fourth Circuit issued an Order denying the writ applications.  At approximately 12:37 p.m. on Monday, August 6, Defendants filed a Notice of Removal.

Less than four business days elapsed between filing of the Petition and removal.  The only actions undertaken by Defendants during these four days were to address the "fire drill" of what it believed to be a wholly unconstitutional and unfounded TRO.  At no time were the merits of the action addressed.  Once Defendants had obtained the necessary information to properly plead the corporate structure of the entities named in the action -- information that was largely obtained over the weekend from England where Defendant Financial Times Group Limited is located -- the Notice of Removal was filed.

Rain responded with a flurry of filings on August 6 in an attempt to defeat diversity jurisdiction.  It filed a First Supplemental and Amending Complaint, now alleging that Rain is a citizen of Delaware and Connecticut.  This is in direct conflict with sworn pleadings, including an affidavit from it Chief Financial Officer, that were filed in the state Court last week, and that alleged that Rain was a citizen of Louisiana.  The First Supplemental and Amending Complaint also attempts to add two new defendants, "Debtwire Inc." and "FT Group Inc," neither of which are properly named.  Next, at about 5:13 p.m., Rain filed its Motion to Remand, with a memorandum in support and a motion for expedited consideration; then, at about *10:33 p.m.*,

---

[6] *See* Order denying motion to dissolve TRO and setting hearing, attached as exhibit 5.

Rain filed a supplemental memorandum in support of the motion to remand (and a motion for leave to file that document).

At a telephonic status conference on the morning of August 7, the Court set a hearing on the Motion to Remand for today at 3:00 p.m. and ordered Defendants to file their Opposition to the Motion to Remand by 1:00 p.m..

The motion to remand should be denied because (1) there is complete diversity of the parties; (2) Defendants have not waived and are not estopped from asserting their right to remove; and (3) abstention is not warranted.

## II.     THERE IS COMPLETE DIVERSITY OF THE PARTIES

There is complete diversity of the properly named parties in this action.

### A.     Plaintiff is a Citizen of Louisiana.

The Petition alleges that Plaintiff "is a Louisiana limited liability company whose members and is domiciled [sic] in Orleans Parish where its registered office is located."[7]

Because the "citizenship of an LLC is determined by the citizenship of all of its members,"[8] the question of Plaintiff's citizenship is answered.  Plaintiff has alleged that its members are "domiciled in Orleans Parish," Louisiana.  Because the members of Plaintiff are domiciled in Louisiana, the members are citizens of Louisiana.[9]  Because the members of Plaintiff are citizens of Louisiana, Plaintiff, too, is a citizen of Louisiana.[10]  No further inquiry is needed.

Apparently realizing that if it is a citizen of Louisiana, there can be no doubt that complete diversity exists, Plaintiff now attempts to backtrack from its prior allegations.

---

[7] *See* Petition (exhibit 2), ¶ 1.
[8] *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008).
[9] *See Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954) (with "respect to the diversity jurisdiction of the federal courts, citizenship has the same meaning as domicile").
[10] *See Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954) (with "respect to the diversity jurisdiction of the federal courts, citizenship has the same meaning as domicile").

In its original Petition, Rain alleged simply that it had more than one member and that all of its members are Louisiana domiciliaries and citizens.[11]  In its first supplemental and amending complaint, however, the story becomes far more complicated.  Rain now alleges that it has only a sole member, named CPC Holdings, USA, LLC.  Rain does not state the citizenship of CPC Holdings, USA, LLC and the Louisiana Secretary of State has no listing for that alleged entity.  Next, Rain asserts, CPC Holdings, USA, LLC has only a sole member, named Carbon Holdings USA, LLC.  Plaintiff again does not state the citizenship of Carbon Holdings USA, LLC and the Louisiana Secretary of State again has no listing for that alleged entity.   Carbon Holdings USA, LLC, Rain tells us, has only a sole member, named Rain Carbon USA LLC.  It is no surprise to learn that Plaintiff also does not state the citizenship of Rain Carbon USA LLC and the Louisiana Secretary of State again has no listing for that alleged entity.  Finally, Plaintiff alleges that Rain Carbon USA LLC has only a sole member, named Rain Commodities USA, Inc.  Rain Commodities USA, Inc., Plaintiff asserts, is a Delaware corporation with its principal place of business in Connecticut.  Thus, in conflict with its prior allegations expressly and without reservation describing the company as a citizen of Louisiana, Rain now asserts it is allegedly a citizen of Delaware and Connecticut.

None of the entities mentioned by Plaintiff are authorized to do business in Louisiana, according to the records of the Louisiana Secretary of State.  And, of course, since a party -- particularly its Chief Financial Officer -- is presumed to know its own citizenship, one is left to wonder why Plaintiff's initial allegations about its own citizenship are so different from the allegations it now makes.  At the very least, on this record, there is no basis to make a factual

---

[11] *See* Petition (exhibit 2), ¶ 1.

finding that Plaintiff is a Delaware corporation, whose principal place of business is in Connecticut.

It is self-evident, and cases routinely hold, that parties are presumed to know their own citizenship. Though those cases typically arise in the removal context and address the defendants' awareness of his own citizenship, the reasoning applies with equal force to plaintiffs.

In *T&T Marine World, Inc. v. New Hampshire Ins. Co.*, 2007 WL 196897 (E.D. La. 1/22/07), the state-court Petition alleged that both the plaintiff and the defendant were citizens of Louisiana. The defendant, actually a citizen of a different state, did not seek removal until more than thirty (30) days after service of the petition. Perhaps not surprisingly, the Court held the removal untimely, stating that it "would be hard pressed to believe that Defendant was not aware of its own citizenship until the expiration of the removal period." Id. at *2.

Numerous cases from numerous courts agree that a party knows its own citizenship. *See, e.g., Praisler v. Ryder Integrated Logistics, Inc.*, 417 F.Supp.2d 917, 920 (N.D. Ohio 2006) ("an individual or a corporate defendant can be expected to know its own citizenship"); *Day v. Zimmer Inc.*, 636 F.Supp. 451, 453 (N.D. N.Y. 1986) ("obviously defendant is in the best position to know its residence for diversity purposes"); *KDY, Inc. v. Hydroslotter Corp.*, 2008 WL 4938281, *4 (N.D. Cal. 2008) ("courts surely can presume that a defendant is aware of various basic personal facts, including the location of one's citizenship").

This case presents the apparently-rare situation where a plaintiff alleges that it misrepresented its own citizenship. Rain, however, is presumed to know -- and indeed must have actually known -- its own citizenship. Plaintiff asserted that its members, and therefore Plaintiff itself, were citizens of Louisiana. Defendants should be allowed to rely on Plaintiff's assertion.

Moreover, none of the properly-named Defendants are citizens of Delaware or Connecticut.   So whether Plaintiff is a citizen of Louisiana, as it first alleged, or of Delaware and Connecticut, as it now asserts, there is still complete diversity.

**B.**      **Defendants are Citizens of New York and the United Kingdom.**

       1.      **Stephen Kurczy.**  The individual plaintiff, Stephen Kurczy is a citizen of New York.  No one disputes that fact.

       2.      **Financial Times Group Limited.**  Financial Times Group Limited is a United Kingdom corporation with its principal place of business in London, England.  No one disputes that fact.

       3.      **MergerMarket (U.S.) Limited.** The publication at issue in this action, *Debtwire* news service, is a division of MergerMarket (U.S.) Limited ("MergerMarket"), which is in turn affiliated with Defendant Financial Times Group Limited.  Plaintiff has been aware from the first filing by Defendants in this action that MergerMarket is the operative corporate entity in the United States with control over the publication of *Debtwire.* Yet, because MergerMarket is a New York corporation with its principal place of business in New York, Rain has apparently deliberately avoided naming MergerMarket as a Defendant.  Instead, in a thinly disguised effort to destroy diversity, Rain has attempted to add the following two improperly-joined defendants:

       4.      **Debtwire Inc.**  Debtwire Inc. is not a juridical, corporate or other entity. Any review of the Delaware Secretary of State's filings would have readily revealed that Debtwire, Inc. was dissolved in 2001.  Accordingly,

"Debtwire Inc." was fraudulently named as a party to this action and should be stricken as a defendant.[12]

5.    **FT Group, Inc.**  FT Group, Inc. is not an operating company.  FT Group, Inc. does not publish news or anything else and has no operational control over MoneyMarket or *Debtwire*.  It has no relationship to the publications or entities properly at issue in this action except that it shares an ultimate United Kingdom parent entity.  FT Group, Inc. is not the parent company of MergerMarket (U.S.) Limited.  It was added as a defendant only in an unfounded attempt to destroy diversity.

FT Group Inc. is improperly joined because Plaintiff could not possibly establish a cause of action against that entity in state court.  *See Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004); *see also Boone v. Citigroup, Inc.*, 416 F.3d 382 (5th Cir. 2005) (finding joinder improper); *see also Terra Nova Sciences, LLC v. JOA Oil*, 2010 WL 1903592 at*2 (S.D. Tex. 5/10/10) (finding improper joinder and denying remand).  A mere theoretical possibility of recovery is insufficient.  *Travis v. Irby*, 326 F.3d 644 (5th Cir. 2003).  "If no reasonable basis of recovery exists, a conclusion can be drawn that the plaintiff's decision to join the local defendant was indeed [improper], *unless* that showing compels dismissal of *all defendants*."  *McDonal v. Abbott Laboratories*, 408 F.3d 177, 183 (5th Cir. 2005) (emphasis in original).

Here, Defendants would certainly succeed in moving to dismiss the complaint against FT Group, Inc., against which Plaintiff has not plead ***a single factual allegation*** to support including

---

[12] Fraudulent joinder occurs when the plaintiff engaged in "actual fraud in the pleading of jurisdictional facts." Augustine v. Employers Mut. Cas. Co., 2010 WL 4930317 at *7 (W.D. La. 11/30/10) (finding actual fraud in the pleading of jurisdictional facts and denying motion to remand).  Actual fraud in this context means a concealment or false representation regarding a defendant's true citizenship made to defeat diversity.  Id.  Here, Plaintiff incorrectly pleads that "Debtwire Inc." is a corporate entity incorporated in Delaware.  Since the records of Debtwire Inc.'s dissolution are so readily available, there was no good faith basis to try to add it as a Defendant.

it as a Defendant.  Nor can it, as FT Group Inc. is not an operating company.  FT Group Inc. does not publish anything  and has no involvement in the publication of *Debtwire*.  In its Petition for Injunctive Relief, Plaintiff incorrectly names "FT Group", which does not exist as a corporate entity, and even there fails to allege any involvement by FT Group, stating only (and again erroneously) that Debtwire North America is "a division of The Financial Times Group and/or FT Group."

In its Supplemental and Amending Complaint, Plaintiff pleads exactly nothing about FT Group, Inc., other than its place of incorporation and principal place of business (which is obviously of principal concern to Plaintiff, as that is the only reason the entity was joined.) Under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), these allegations are insufficient to meet Plaintiff's "obligation to provide the grounds of his entitlement to relief" against FT Group, Inc.  *Twombley*, 550 U.S. at 555. Where, as here, plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."  *Id.* at 570.

Thus, Plaintiff cannot establish a cause of action against FT Group, Inc.  Under no analysis of the pleadings could one find that FT Group, Inc. misappropriated Rain's alleged trade secrets.[13]  *See Creative Risk Controls, Inc. v. Brechtel*, 01-1150 (La.App. 5th Cir. 4/29/03), 847 So.2d 20, 26, *writ denied* 03-1769 (La. 10/10/03), 855 So.2d 353 (finding no evidence of any directive, request or knowledge by certain defendants of any breaches of duty, usurpation of corporate opportunity or alleged trade secret violations).

---

[13] Alternatively, the Court may drop FT Group, Inc. from the suit.  Under Supreme Court and Fifth Circuit jurisprudence, Rule 21 invests the district court with authority to dismiss a dispensable non-diverse party to cure a jurisdictional defect.  *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832, 109 S .Ct. 2218 (1989); *Dayton Independent School Dist. v. U.S. Mineral Products Co.*, 906 F.2d 1059, 1067 (5th Cir.1990).

Accordingly, the Court should conclude that Plaintiff's decision to join the non-diverse

FT Group, Inc. indeed was improper.

**III.  DEFENDANTS HAVE NOT WAIVED AND ARE NOT ESTOPPED
FROM ASSERTING THEIR RIGHT TO REMOVE.**

In arguing that defendants have waived their right of removal, plaintiff ignores the

voluminous federal case law holding that opposing a preliminary injunction or temporary

restraining order does not constitute a waiver.  *See, e.g.*, *Rothner v. City of Chicago*, 879 F.2d

1402, 1418 (7th Cir. 1989) (applying "long-settled rule" that "opposing a motion for a temporary

restraining order in state court does not waive the right to remove"); *Atlanta, K. & N. Ry. Co. v.*

*Southern Ry. Co.*, 131 F. 657, 663 (6th Cir. 1904) (finding no waiver because state court's

refusal to discontinue a pending preliminary injunction was not a hearing on the merits or a trial

on any question affecting the merits).  Nor is the right to removal waived when defendant has

sought state court appellate review of a grant of preliminary relief.  *Johnston v. Tampa Sports*

*Authority*, 410 F.Supp.2d 1143, 1145 (M.D. Fla. 2005) (finding no waiver where defendant

sought state court interlocutory review of preliminary injunction); *Rose v. Giamatti*, 721 F.Supp.

906, 923 (S.D. Ohio 1989) (same); *Bedell v. H.R.C., Ltd.*, 522 F.Supp. 732, 738 (E.D. Ky. 1981)

(same).

In order to waive its right to remove an action to federal court, defendant's "intent to

waive the right to remove to federal court and to submit to state court jurisdiction must be clear

and unequivocal."  16 Moore's Federal Practice § 107.18[3][a], 107-174 (3d ed. 2008).  Actions

that are "preliminary and not conclusive in character and which do not actually submit the merits

of a claim for a binding decision" do not constitute a waiver.  *Beasley v. Union Pac. R.R. Co.*,

497 F.Supp. 213, 216 (D. Neb. 1980).  Nor do actions to preserve the *status quo ante, Scholz v.*

*RDV Sports, Inc.*, 821 F.Supp. 1469, 1470 (1993), or actions that courts "consider to be

essentially defensive in nature." 19A Fed. Prac. & Proc. Juris. App. Fed. Jud. Code Revision Pt. III Rptr. Note J (2d ed.).

Thus, defensive actions against preliminary motions that do not lead to a final resolution on the merits do not constitute waiver because they are not inconsistent with an intention to have the case heard in federal court. *Beasley*, 497 F. Supp. at 216; *Swan v. Community Relations-Social Development Commission*, 374 F. Supp. 9, 12 (E.D. Wis. 1974). This is true even if the federal court will be considering the same issues reviewed in the preliminary motion. For example, in *Johnston v. Tampa Sports Authority*, 410 F.Supp.2d 1143, 1145 (M.D. Fla. 2005), the Court stated,

> As a practical matter, by virtue of the removal, this federal case will be a review of the state court's preliminary injunction. Notwithstanding, that injunction did not resolve the merits of the case and Defendants did not attempt to have the case resolved on the merits. By seeking interlocutory review of the preliminary injunction, Defendants merely continued their defensive efforts against the temporary injunction. . . . These circumstances do not support a finding that Defendants clearly and unequivocally waived their right to remove to federal court.

Here, defendants' actions have been entirely defensive and evidenced no intent to submit to state jurisdiction for a binding decision on the merits. Defendants simply opposed a preliminary TRO that altered the status quo and sought interlocutory review to dissolve that TRO once issued. Defendants' actions are all the more reasonable because it acted to file its Notice of Removal petition only few days after the Petition was filed. This is exactly the sort of conduct that courts repeatedly have held does not constitute a waiver. *Rose*, 721 F.Supp. at 923; *Blair*, 1988 WL 6918, at *1-2; *Bedell v. H.R.C., Ltd.*, 522 F.Supp. 732, 738 (E.D. Ky. 1981).

The cases cited by plaintiff are not to the contrary. In *Moore v. Permanente Medical Group*, 981 F.2d 443, 447-48 (9th Cir. 1992), defendants evinced an intent to proceed in state court when they acted to combine plaintiff's state court petition to vacate an arbitration award

PD.7150146.1

with another action in a court in the same state. Defendants sought to remove only after

receiving an unfavorable decision on the merits of the petition to vacate the arbitration award. In

*Bolivar Sand Co. v. Allied Equip., Inc.*, 631 F.Supp. 171 (W.D. Tenn. 1986), defendant did not

seek to remove until midway through trial and after its motion for mistrial was denied. In

*Chicago Title & Trust Co. v. Whitney Stores, Inc.*, 583 F.Supp. 575, 576-77 (N.D. Ill. 1984),

defendant demonstrated its intention to proceed in state court by "obtaining an agreed

continuance of its trial without stating its intent to trigger removal in the interim." And in *Kiddie*

*Rides U.S.A. v. Elektro-Mobiltechnik GMBH*, 579 F.Supp. 1476, 1479-80 (C.D. Ill. 1984), the

Court explicitly stated that it probably would have denied remand based solely on waiver, but for

the fact that defendant's removal action also was untimely. None of these cases found waiver

based solely on the kind of preliminary, defensive actions that defendants here have taken in

state court.[14]

---

[14] Late last night, Plaintiff included additional cases regarding waiver of removal, none of which bear any resemblance to the procedural posture here, where Defendants have not filed any dispositive motion or shown an intent to allow the state court to render a final decision on the matter. *See Brown v. Demco, Inc.*, 792 F.2d 478, 481 (5th Cir. 1986) (defendants not only missed their removal deadline by four years, but "filed answers, amended answers, motions of various kinds, third party demands, cross claims, amended cross claims, and participated in discovery and depositions" during those four years, demonstrating a clear intent to proceed in state court); *Schell v. Food Machinery Corp.*, 87 F.2d 385, 388-89 (5th Cir. 1937) (over a six-month period, the parties answered, moved to dismiss, and made motions opposing one another's pleadings, all in state court); and *Johnson v. Heublein Inc.*, 227 F.3d 236, 244 (5th Cir. 2000) (defendants waived their right to remove by filing motions to dismiss and for summary judgment, "thus invoking the jurisdiction of the state court in resolving the issues presented by the original complaint."). Equally distinguishable are the cases that Plaintiff added to support its defective argument that defendants' attempted to decide the case on its merits: In *Schulz v. Amalgamated Mgmt. Co.*, 1999 WL 242700, at *2 (N.D. Tex. 4/19/99), defendants filed for partial summary judgment, a dispositive motion seeking to have part of the case adjudicated by the state court on the merits, while giving "no hint that it intended to remove the case." The *Schulz* court distinguished between this sort of behavior, which waived the right of removal, and a mere motion to preserve the *status quo ante*, which does not. Plaintiff also cited *Gore v. Stenson*, 616 F.Supp. 895, 897-88 (S.D. Tex. 1984), a case in which no waiver was found.

PD.7150146.1

## IV.    THERE IS NO BASIS FOR THE COURT TO ABSTAIN

It is well settled that "abstention is the exception, not the rule." *Louisiana Debating &*
*Literary Ass'n v. City of New Orleans*, 42 F.3d 1483, 1491 (5th Cir. 1995). Abstention is not
warranted here for a number of reasons.

### 1.    The Threat to First Amendment Rights Militates Against Abstention.

As an initial matter, federal courts are not required to abstain from deciding a matter. *See*
*Louisiana Debating & Literary Ass'n*, 42 F.3d at 1491. That principle is especially true in
matters where, as here, First Amendment rights are threatened. *Mangual v. Rotger-Sabat*, 317
F.3d 45, 64 (1st Cir. 2003), *citing City of Houston v. Hill*, 482 U.S. 451, 467, 107 S. Ct. 2502,
2512-13 (1987); *see also Louisiana Debating & Literary Ass'n*, 42 F.3d at 1492; *Baggett v.*
*Bullitt*, 377 U.S. 360, 379, 84 S. Ct. 1316, 1326 (1964); *Ripplinger v. Collins*, 868 F.2d 1043,
1049 (9th Cir. 1989); *Wolfson v. Brammer*, 616 F.3d 1045, 1066 (9th Cir. 2010). Indeed, it "is
rarely appropriate for a federal court to abstain under *Pullman* in a First Amendment case,
because there is a risk in First Amendment cases that the delay that results from abstention will
itself chill the exercise of the rights" sought to be protected. *Porter v. Jones*, 319 F.3d 483, 486-
87 (9th Cir. 2003); *see also Entm't Software Ass'n v. Foti,* 451 F. Supp. 2d 823, 826 (M.D. La.
2006). Furthermore, the delay caused by abstention presents "significant risks of irreparable
injury" to the First Amendment rights at issue. *Video Software Dealers Ass'n v. Maleng*, 325
F.Supp.2d 1180, 1184 (W.D. Wash. 2004). Abstention is even less appropriate here because the
Defendants' protected speech has been specifically prohibited. *See Bad Frog Brewery, Inc. v.*
*New York State Liquor Auth.*, 134 F.3d 87, 94 (2d Cir. 1998).

**2.  Abstention is Inappropriate Because There is No Unclear Issue of State Law.**

Abstention is further unwarranted because this matter presents no unclear issue of state law.  As the Fifth Circuit has explained, "*Pullman* abstention depends first and foremost upon an ambiguity in state law." *Lipscomb v. Columbus Mun. Separate Sch. Dist.*, 145 F.3d 238, 243 (5th Cir. 1998) *citing Baran v. Port of Beaumont Navigation Dist.*, 57 F.3d 436, 442 (5th Cir.1995). Where the federal constitution question does not depend on an uncertain issue of state law, "invoking the abstention doctrine is tantamount to shirking the solemn responsibility of the federal courts to guard, enforce, and protect every right granted or secured by the constitution of the United States." *O'Hair v. White*, 675 F.2d 680, 693 (5th Cir. 1982) (internal citations and quotation marks omitted).

There is no ambiguous issue of state law here.  The TRO at issue clearly and unequivocally prohibits Defendants' exercise of their First Amendment rights through a prior restraint on speech.  Moreover, state law is clear that Plaintiff's earnings report is not a "trade secret" nor is it a "misappropriation" of a trade secret for Defendants to publish Plaintiff's earnings report.  A Louisiana appellate court has expressly considered and rejected a claim that a profit and loss statement is a trade secret under the Louisiana Trade Secrets Law.  *See AutoCount, Inc. v. Automated Prescription Systems, Inc.*, 94-1020 (La.App. 3d Cir. 2/1/95), 651 So.2d 308, 312.  Clearly, a company's earnings report is not a "trade secret."

Moreover, the publication of Plaintiff's earnings report definitively is not a "misappropriation" under the Louisiana Trade Secrets Law.  *See Stork-Werkspoor Diesel V.V. v. Koek*, 534 So.2d 983, 985 (La.App. 5th Cir. 1988); *Omnitech International, Inc. v. Clorox Co.*, 11 F.3d 1316, 1324 (5th Cir. 1994); *Arco Oil & Gas Co. v. DeShazer*, 94-504 (La.App. 3d Cir. 11/2/94), 649 So.2d 444, 448.  Under well-established law, any economic advantage that

- 14 -

Defendants may gain from publishing Plaintiff's earnings report, "does not derive from use of the information in an unfairly competitive manner." *Stork-Werkspoor*, 534 So.2d at 986. Simply put, Defendants do not compete with Plaintiff in the calcined petroleum coke market or any other marketplace. Thus, according to well-settled law, under the Louisiana Trade Secrets Act, Defendants could not have "misappropriated" a trade secret of Plaintiff's. Because no unclear issues of state law are presented here, abstention would be inappropriate. *See, e.g., Turner v. Houma Mun. Fire*, 2002 WL 1467876, *8 (E.D. La. July 8, 2002)(Zainey, J.).

    **3. Defendants Have a Right to Return to this Court for Determination of Federal Issues.**

Finally, "a party has the right to return to the District Court, after obtaining the authoritative state court construction for which the court abstained, for a final determination of his claim." *Sevin v. Parish of Jefferson*, 632 F. Supp. 2d 586, 591 (E.D. La. 2008), *quoting England v. Louisiana State Bd. of Medical Examiners,* 375 U.S. 411, 417, 84 S.Ct. 461 (1964); *see also Ziegler v. Ziegler*, 632 F.2d 535, 539 (5th Cir. 1980). The Defendants would return to this Court for an adjudication of their constitutional claim. Accordingly, it would be most efficient in the urgent circumstances presented here for the Court not to abstain. In the alternative, should this Court decide to abstain under *Pullman*, this matter must be stayed, not dismissed. *See Ziegler*, 632 F.2d at 539.

## CONCLUSION

For the reasons set forth above, the Motion to Remand should be denied.

Respectfully submitted,

**PHELPS DUNBAR LLP**


BY: /s/ Mary Ellen Roy
    Mary Ellen Roy (La. Bar #14388)
    Dan Zimmerman (La Bar #2202)
    Stephanie Lemoine (La. Bar #31349)
    365 Canal Street, Suite 2000
    New Orleans, Louisiana 70130-6534
    Telephone: (504) 566-1311
    Telecopier: (504) 568-9130
    Roym@phelps.com
    dan.zimmerman@phelps.com

**ATTORNEYS FOR DEFENDANTS STEPHEN KURCZY, MERGERMARKET (U.S.) LIMITED, AND THE FINANCIAL TIMES GROUP LIMITED**


## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on the 7th day of August, 2012, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.  I further certify that there are no non-participants in the CM/ECF system in this action.

       /s/ Mary Ellen Roy